UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In the Matter of the Application of
INTER COUNTY GLASS, INC.,

                                  Petitioner,                    **MEMORANDUM AND ORDER**
                                                                                    CV 04-3579 (WDW)
              -against-

For a Judgment Staying the Arbitration Commenced by
TRUSTEES OF LOCAL UNION 580 OF THE
INTERNATIONAL ASSOCIATION OF BRIDGE
STRUCTURAL AND ORNAMENTAL IRON
WORKERS EMPLOYEE BENEFIT FUNDS,

                                  Respondents.
-------------------------------------------------------------------X

**APPEARANCES:**

**JOHN T. MCCARRON, PC**
Attorneys for Petitioner
535 Broadhollow Road
Melville, New York 11747

**COLLERAN, O'HARA & MILLS LLP**
Attorneys for Respondents
1225 Franklin Avenue
Garden City, New York, 11530

**WALL, Magistrate Judge:**

     Before the court is the motion for summary judgment by the Respondents, Trustees of Local Union 580 of the International Association of Bridge Structural and Ornamental Iron Workers Employee Benefit Funds (the "Trustees" or "respondents"). Docket Entry [21]. Petitioner Inter County Glass, Inc. ("Inter County") has cross-moved for summary judgment. [24]. For the reasons set forth herein, the respondents' motion for summary judgment is granted, and the petitioner's cross-motion is denied.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

Inter County is a New York corporation authorized to do business in the State of New York. Richard Patiri is the President of Inter County. Local Union 580 of the International Association of Bridge Structural and Ornamental Iron Workers ("Local 580") is a labor organization representing construction workers in the iron working industry. Resp. Rule 56.1 Statement at ¶ 4. The terms and conditions of Local 580 workers' employment are governed by a collective bargaining agreement ("CBA"). *Id.* The respondents are Trustees of employee benefit plans covering Local 580 workers, and collect benefits on behalf of those workers. *Id.* at ¶ 5; Petitioner's Rule 56.1 Counter Statement at ¶ 5.

On November 6, 1996, Patiri, on behalf of Inter County, entered into a Jobsite Agreement with Local 580 for work to be performed at Roosevelt Field (the "Roosevelt Field Jobsite Agreement"). Resp. Ex. C. The agreement states in part that:

> this jobsite agreement is given on a one time only basis, and that any work performed in the jurisdiction of Local #580 outside of the above referenced jobsite subjects this employer to the Local #580 Collective Bargaining Agreement in effect this date.

*Id.* For the work performed at the Roosevelt Field jobsite, Inter County paid the Local 580 workers union wages, submitted Weekly Payroll Reports, and made benefit contributions in the amounts set forth in the CBA. Resp. Rule 56.1 Statement at ¶ 7. There is no money due regarding work performed at Roosevelt Field. Petitioner's Rule 56.1 Counter Statement at ¶ 7.

On June 14, 2001, Patiri, on behalf of Inter County, entered into a second Jobsite

Agreement with Local 580, this time covering work to be performed at a Coach store at 44th Street and Madison Avenue in Manhattan (the "Coach Jobsite Agreement"). Resp. Ex. C. The Coach Jobsite Agreement also contained the provision, quoted *supra*, stating that any work outside this jobsite would subject Inter County to the CBA. As at the Roosevelt Field jobsite, Inter County paid the Local 580 workers union wages, submitted Weekly Payroll Reports, and made benefit contributions in the amounts set forth in the CBA for the work performed at the Coach jobsite. Resp. Rule 56.1 Statement at ¶ 8. There is no money due regarding work performed at Coach. Petitioner's Rule 56.1 Counter Statement at ¶ 8.

Subsequent to the execution and performance of work under the Roosevelt Field and Coach Jobsite Agreements, Inter County used Local 580 workers to perform work at additional jobsites outside the two Jobsite Agreements. Inter County submitted Weekly Payroll Reports for work performed at J. Crew at 45th St. and Madison Avenue from August to September 2001, and for work performed at the Nassau Credit Union in Westbury from November to December 2001. Resp. Ex. D. In total, thirteen such reports were submitted. Every one of those reports, signed by Patiri, contains the following provision:

> These contributions shall constitute the acceptance by the employer-purchaser to abide by all terms and conditions of the collective bargaining agreement currently in force between the Allied Metal Building Industries, Inc., and the International Association of Bridge, Structural and Ornamental Iron Workers Local 580. The employer agrees further to be bound by and become a party to the Trust Fund Agreements of said Local Union and accepts all terms, conditions and provisions thereof. The collective bargaining Agreement and its related trust agreement is deemed to be incorporated herein as if it were herein set forth at length.

*Id.*[1] The Weekly Payroll Reports further contain the following certification directly above the signature line:

> I hereby certify (1) that this report reflects all wages paid during the period shown to all employees of the Employer herein named who are covered by the current collective bargaining agreements of Local 580, and (2) that the amounts shown are true and correct, and (3) all information in this report is true and accurate.

*Id.*

Inter County submitted to an audit by the Funds' auditor. Resp. Rule 56.1 Statement at ¶ 17. The auditor prepared a report covering the audit period of June 19, 2001 through August 31, 2002. The report, dated September 26, 2002, found that additional contributions were due for work performed at the Nassau Credit Union site during 2001. Resp. Ex. E. The audit report further found that Inter County owed contributions for work performed from January to June 2002 at the National Amusements Multiplex in Holtsville. *Id.* The report concluded that Inter County owes $83,016.37 in additional contributions, plus interest. *Id.*[2]

Respondents, arguing that Inter County is subject to the CBA, demanded arbitration pursuant to the arbitration clause in that agreement. Resp. Ex. F; CBA Art. XXIX (f), Resp. Ex. A. Inter County filed an action to stay the arbitration in New York Supreme Court, and that action was removed to federal court. Petitioner's Rule 56.1 Counter Statement at ¶ 23.

---

[1] Four Weekly Payroll Reports concerning the Coach jobsite are also attached in Respondents' Ex. D. Those reports were signed by C. Macken, Inter County's bookkeeper, and contain a provision identical to that contained in the reports signed by Patiri.

[2] Respondents further claim that Inter County performed work at Sachem East High School from July through October 2003. Respondents' Rule 56.1 Statement at ¶ 19; Respondents' Ex. F. They do not provide any remittance reports or audit report to support this claim.

While respondents do not claim that Inter County signed the CBA, respondents contend that Inter County is nonetheless bound by the CBA, particularly the arbitration clause contained therein, because of the authorized signatures on the Jobsite Agreements, the Weekly Payroll Reports, and its course of conduct. Resp. Rule 56.1 Statement at ¶ 25. Inter County argues that it never signed a CBA or any other agreement to arbitrate, that it not a party to any such agreement, and that it is not bound by the CBA. Petitioner's Rule 56.1 Counter Statement at ¶¶ 24-26.

## DISCUSSION

### A. Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine

5

issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). When faced with cross motions for summary judgment, the court must judge each motion on its own merits. *See Scwabenbauer v. Board of Educ.,* 667 F.2d 305, 314 (2d Cir. 1981).

In this case, the parties are in agreement over the facts, but differ as to the legal effect of those facts. In short, the parties ask, as a matter of law, is Inter County bound by the CBA including the arbitration clause contained therein? With the summary judgment standards in mind, the court now turns to the issues presented on these motions.

**B.     Applicability of the CBA**

Although it is undisputed that Inter County never signed the CBA, it may still be bound to the terms of that agreement-- "the only question is whether [Inter County's] conduct manifested an intent to adopt, or agree to, the unsigned CBAs." *Brown v. C. Volante Corp.,* 194 F. 3d 351, 355 (2d Cir. 1999). In *Brown,* the employer had signed one CBA, but did not sign two subsequent CBAs. During the time period covered by those subsequent CBAs, however, the employer submitted remittance reports signed by the employer's president, which contained a phrase indicating that it was submitted in accordance with the CBA. *Id.* at 353. It also paid its

6

union employees at the rates specified in the CBA, and allowed an audit of its books as required by the CBA.

The current case bears marked similarities with *Brown*, the lone distinguishing fact being that the employer in *Brown* had signed an earlier CBA. Although that fact is certainly not insignificant, the absence of such an occurrence in this case does not compel a conclusion contrary to that reached by the Second Circuit in *Brown*. The court finds that Inter County's conduct is more than sufficient to manifest an intent to be bound to the CBA.

At the outset, it is undisputed that Patiri signed the Roosevelt Field and Coach Jobsite Agreements on behalf of Inter County. That agreement contained clear language binding Inter County to the CBA should Inter County perform work within the union's jurisdiction beyond those Jobsites, and it is further undisputed that Local 580 workers performed work for Inter County on at least two additional jobsites. Accordingly, by the terms of the Jobsite Agreements, the use of Local 580 workers at sites outside those governed by the Jobsite Agreements served to bind Inter County to the CBA.

Inter County further manifested its intent to be bound by its submission of a total of thirteen Weekly Payroll Reports for work performed at the J. Crew and Nassau Credit Union sites. Those reports, each signed by Patiri, evidence Inter County's agreement "to be bound by and become a party to" the CBA and to accept "all terms, conditions and provisions thereof." Resp. Ex. D; *see also Trustees of the Flint Michigan Laborers' Pension Fund v. In-Puls Constr. Co.,* 835 F. Supp. 972, 975 (E.D. Mich. 1993) (employer provided clear evidence of its intent to provide benefits pursuant to the CBA in signing and submitting payroll sheets and fringe benefit forms). As indicated by those reports, Inter County made payments consistent with the

requirements of the CBA, again demonstrating its willingness to abide by the terms of that agreement. Inter County's actions in this regard are particularly telling since federal law "prohibits an employer from contributing to a union's ERISA trust fund unless done pursuant to a valid written agreement, and provides that a violation of this rule is a felony, punishable by up to $15,000 in fines and imprisonment for up to five years." *Seabury Constr. Corp. v. District Council of New York & Vicinity of the United Bhd. of Carpenters & Joiners of America,* 461 F. Supp. 2d 193, 198 (S.D.N.Y. 2006) (citations omitted).

Finally, Inter County went so far as to allow an audit of its books as required by the CBA, *see* CBA Art. XXIX (c), and has offered no alternate reason for allowing the audit to take place. The court finds that Inter County's voluntary participation in the audit is a further manifestation of its intent to be bound by the CBA. *See Brown,* 194 F.3d at 353 (noting that the employer cooperated in an audit "even though most of it concerned months during which appellant was not a signatory to a CBA."); *Seabury,* 461 F. Supp. 2d at 198 (employer submitted to three audits in apparent compliance with an unsigned agreement).

Viewed both separately and in their entirety, the acts of Inter County demonstrate its clear intent to be bound to the CBA. The submission of remittance reports "expressly submitted 'in accordance with the terms of' the CBAs-appellant's cooperation with the audit, its payment of union wages to employees. . . are sufficient, absent contrary evidence, to establish as a matter of law [the employer's] intent to adopt the two unsigned CBAs." *Brown,* 194 F.3d at 354-55. Inter County performed in seemingly all regards as if it were a party to the CBA. It never expressed any disavowal of the CBA, and even if it had, such an action does not inevitably lead to the conclusion that an employer has not manifested an intent to be bound to a CBA *See Service*

8

*Employees Int'l Union, Local 32BJ v. Coby Grand Concourse, LLC,* 2006 WL 692000, at *4 (S.D.N.Y. Mar. 16, 2006) (finding that the employer implicitly assumed the agreement despite evidence that it expressly declined to sign an assumption agreement). It is only when the arbitration clause was invoked that Inter County apparently balked at complying with the provisions of the CBA. Beyond this action, Inter County has presented no evidence of any express disavowals of the CBA. Inter County's actions up to the point it refused to arbitrate manifest a clear intent to be bound by the CBA, and thus the court finds that Inter County's actions compel a finding, as a matter of law, that it is bound to the CBA. The remaining issue is whether the arbitration clause in the CBA may be enforced against it.

### C. Applicability of the CBA's Arbitration Clause

Federal labor policy "favors arbitration as an alternative dispute resolution mechanism." *Seabury,* 461 F. Supp. 2d at 197. The CBA in the current case contains an arbitration clause providing in part that "[i]n the event a dispute arises regarding the meaning, interpretation, application or alleged violation of the Employer's obligations to make required fringe benefit contributions to any of the Funds . . . such dispute shall be submitted to Eric Schmertz, as the Impartial Arbitrator." CBA Art. XXIX (f).

Inter County argues that it cannot be compelled to arbitrate because the Jobsite Agreements and Weekly Payroll Reports signed by it did not contain an explicit agreement to arbitrate. "Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." *Thompson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir. 1995) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)). This general principle does not,

however, support Inter County's argument that a nonsignatory can never be bound to an arbitration agreement. The Second Circuit has recognized "five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *Thompson-CSF,* 64 F.3d at 777; *see also Sarhank Group v. Oracle Corp.,* 404 F.3d 657, 662 (2d Cir. 2005) (recognizing "instances of incorporation by reference, assumption, veil piercing/alter ego and estoppel and the like" as grounds for binding a nonsignatory to an arbitration agreement). The court finds that Inter County is bound to arbitrate under the theory of incorporation by reference.[3]

The fact that Inter County did not sign the CBA is immaterial. In a case involving an unsigned CBA, the Second Circuit found that "[p]arties are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements to which they are not a party." *Ronan Assocs. Inc. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs,* 24 F.3d 447, 449 (2d Cir. 1994). The acknowledged agreements between Inter County and Local 580, including the Jobsite Agreements, incorporated the benefits and obligations under the CBA "and one of those benefits was the right to compel arbitration." *Id.*

Inter County's intent to be bound is also clear from the Weekly Payroll Reports, signed by its authorized personnel, which clearly state that the CBA "is deemed to be incorporated herein as if it were herein set forth at length." Resp. Ex. D. Inter County has not supported its argument that the arbitration clause is somehow exempt from this clear expression of incorporation by reference. Accordingly, the court finds that the CBA was expressly incorporated by reference as

---

[3]Although the argument was not presented by respondents, the court notes that estoppel would likely be another basis for the finding that Inter County is bound to arbitrate since it derived direct benefits from the CBA.

10

the agreement between the parties, and thus Inter County is bound to its provisions, including the arbitration clause.

## CONCLUSION

In light of the foregoing, respondents' motion for summary judgment is granted and the petitioner's cross-motion for summary judgment is denied. The Clerk of the Court is directed to close the case.

Dated: Central Islip, New York
       September 28, 2007

**SO ORDERED:**

 /s/William D. Wall
WILLIAM D. WALL
United States Magistrate Judge